**ZENO B. BAUCUS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Avenue North, Suite 3200**
**Billings, Montana 59101**
**Phone:    (406) 657-6101**
**FAX:      (406) 657-6989**
**Email:    zeno.baucus@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**DARRELL ALAN HATLEY,**<br><br>Defendant. | CR 18-46-BLG-SPW<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

The United States of America, through Assistant United States Attorney Zeno B. Baucus, provides this response to the defendant's sentencing memorandum for purpose of aiding the Court in advance of sentencing the defendant, Darrell Hatley.

1

The defendant has pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343 and is scheduled to be sentenced on August 30, 2018. The Presentence Report has calculated the defendant's guideline range at 41 to 51 months. Neither party has any objections to the PSR. This memorandum serves to provide the government's recommendation to the Court concerning sentencing.

## OFFENSE CONDUCT

In 2002, the defendant obtained an agriculture loan from Capital Farm Credit ("Capital") in connection with the defendant's operation of his business, Hatley Livestock, LLC. PSR ¶ 5. The original purpose of the loan was for financing cattle and, as part of the arrangement, funds were wired from Capital to the defendant's account in Forsyth. *Id.*

As part of the loan agreement, the defendant was required to submit annual financial statements, along with monthly report detailing his cattle inventory. PSR ¶ 6. Capital also hired auditors to inspect the defendant's inventory of cattle. The defendant was also required to pay down the loan each time he sold cattle. *Id.* In July 2017, Capital's auditors attempted to inspect the defendant's cattle but he was unable to get the defendant to schedule an inspection. PSR ¶ 8. The audit, however, ultimately occurred in August 2017. During this inspection, the defendant informed the auditor that his "numbers were going to be off." PSR ¶ 9.

The defendant admitted that he had been "padding the numbers" on the prior monthly statements sent to Capital to verify the collateral. *Id*. The defendant continued that he had been making false statements concerning his cattle inventory since October 2015. *Id*.

Law enforcement would review and confirm the false reports delivered by the defendant to Capital. Moreover, in February 2018 law enforcement interviewed the defendant, who confirmed that the nature of his previous false statements to Capital for the purpose of securing and maintaining the loan. PSR ¶ 11. All told, the defendant was able to obtain almost $2.1 million dollars from Capital because of his scheme.

## REQUEST FOR DOWNWARD DEPARTURE

The defendant contends that the "remaining point of disagreement in this case[]" relates to his request for a downward departure. Doc. 19 at 4. Putting aside that the defendant's arguments for a downward departure are also captured in his request for a downward variance, this case does not present any material anomalies that would take it out of the heartland of the Guidelines for departure purposes.

*Gall v. United States*, 552 U.S. 38 (2007) requires a sentencing court to first determine the guideline range and then decide whether to apply any of the

guideline departure policy statements to adjust that range. Such departures may be grounded in circumstances that present an "atypical case" lying outside the "heartland" of the conduct covered by the guidelines. *See* USSG §5K2.0(a)(2). The defendant's case is not atypical. He contends that he is entitled to a downward departure concerning the loss amount. Quoting Application Note 20(C) to USSG 2B1.1, the defendant posits that his offense level "substantially overstates the serious of the offense[]" but he fails to argue how.[1] He only couples his argument with the banal position that he intends to repay the victim and a sentence of probation would allow him that opportunity. Doc. 19 at 5-6. This is insufficient to warrant a departure and the Court should not endeavor to re-set the applicable Guidelines range without proper support.[2]

## SENTENCING ARGUMENT

The district court's sentencing duty is to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to

---

[1] The application note offers the sole example of a fraudulent statement that has a widespread and aggregate impact on the markets as a situation that may justify such a departure. That is not the instant case.

[2] Such a position and the facts of this case also conflict with the defendant's circumstances. *See* 5K2.12 (noting that "personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.").

protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting 18 U.S.C. § 3553(a)).

As it relates to the type of crime for which the defendant is scheduled to be sentenced, concern that "white-collar offenders" received special treatment and "frequently do not receive sentences that reflect the seriousness of their offenses" was among the motivations for the Sentencing Reform Act that gave rise to the Sentencing Guidelines. S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3260. Among its principal architects was Justice Stephen Breyer, an original member of the Sentencing Commission. He explained that the Guidelines addressed the issue by requiring a "short but definite period of confinement" for all but "the least serious cases of these white-collar offenses (level '6' or less)[.]" Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 22 (1988). Not only did this reflect the severity of the offenses, it resolved "significant disparities" observed in data gathered by the Commission on how white-collar crimes were treated at sentencing relative to equally serious non-white-collar offenses in the pre-Guideline era. *Id.* at 20. Here, a sentence of 41 months adequately accounts

for the §3553(a) factors and Justice Breyer's pronouncements with respect to the Guideline's treatment of white-collar offenders such as the defendant.

### A. The court should impose a sentence that reflects the seriousness of the defendant's crime and provides just punishment for his offense under 18 U.S.C. § 3553(a).

A sentence at the low-end of the advisory guideline range would adequately account for the defendant's conduct. For almost two years, the defendant engaged in a coordinated effort to steal almost $2,100,000 from Capital. As noted in the PSR, the defendant was required to submit annual and monthly reports to Capital for the purpose of verifying certain collateral on file. Each time the defendant completed paperwork, however, he knowingly made a false statements to Capital for the sole purpose of procuring additional funds. The defendant's conduct was serious and it is why circuit courts have typically recognized the severity of white-collar offenses involving significant losses. *See United States v. Eagle*, 592 F.3d 495, 497-98, 504-05 (4th Cir. 2010) (vacating as substantively unreasonable a sentence of four years' probation where the defendant had evaded $600,000 in taxes); *United States v. Crisp*, 454 F.3d 1285, 1291 (11th Cir. 2006) (reversing as substantively unreasonable a sentence of probation and given hours in custody where the defendant defrauded a bank of $500,000).

The defendant's primary argument in support of his probationary sentence recommendation is that such a sentence would "allow [him] to generate income to be paid toward" restitution and provide for his wife and child. Doc. 19 at 1-2; 10-11. As an initial matter, choosing a sentence with a "single-minded" goal of facilitating restitution is improper and ignores the statutory requirements under 18 U.S.C. § 3553. *United States v. Crisp*, 454 F.3d at 1287, 1290 (11th Cir. 2006). Moreover, such an argument is belied by the considerable financial assets that the defendant currently controls, as reflected in the PSR. *See* PSR at p. 11. It is unclear why these assets cannot provide the necessary support to his family and can be used to make Capital whole if and when he is incarcerated. The defendant's sentencing argument does not pass muster.

Moreover, littered throughout his sentencing memorandum, the defendant refers to his minimal criminal history. Any argument that the defendant's criminal history should earn him a lenient sentence is belied by common sentence and sentencing law. The Guidelines already account for his lack of criminal history and further credit is unwarranted. Indeed, the fact the defendant is a first-time offender is not atypical; so are more than two-thirds of those who stand convicted

of economic offenses in federal court.[3]  It is not difficult to understand why.  Clean backgrounds, something that would have clearly been relevant to Capital, engender the trust upon which those offenses so often rely.

    **B.**    **Adequate deterrence to criminal conduct**

One significant statutory factor that the defendant appears to ignore in advancing such a downward variance is the need for deterrence.  It is important to note that the defendant only came clean with his fraudulent scheme when an employee of Capital was physically on site and able to access the collateral.  At that point, the defendant had no choice but to offer up that the "numbers were going to be off."  In short, the defendant did not unilaterally approach Capital or law enforcement and inform them as to his crimes.  It was only when he was caught did he come clean and, as such, the issue of specific deterrence is relevant.  While the defendant may argue that he will be deterred from any future criminal conduct, the Guidelines "already account[] for the likelihood of recidivism through the guidelines' criminal history computation." *United States v. Rouillard*, 474 F.3d 551, 557 (8th Cir. 2007).  Thus, any downward variance is unnecessary on these grounds.

---

[3] *Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, Fiscal Year 2014 (available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Table14.pdf).

Moreover, general deterrence is an important aspect of white-collar sentencings. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting in part Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After* Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)); *see also United States v. Hayes*, 62 F.3d 1300, 1308 (11th Cir. 2012) ("general deterrence is an important factor in white-collar cases, where the motivation is greed"). Here, the undersigned urges the Court to consider the statutory factor of deterrence, and specifically general deterrence, when imposing sentence. Potential white-collar criminals would be encouraged, rather than deterred, from making material misrepresentations to victims for the purpose of obtaining money if they believed that the penal costs were lenient or non-existent. Deterrence matters. As such, the United States respectfully asks for a sentence of 41 months in custody.

//

//

DATED this 22nd day of August, 2018

                KURT G. ALME
                United States Attorney

                */s/ Zeno B. Baucus*
                ZENO B. BAUCUS
                Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the attached United States Response to the Defendant's Sentencing Memorandum is proportionately spaced, has a typeface of 14 points or more, and has a body containing 1,770 words.

*/s/ Zeno B. Baucus*
ZENO B. BAUCUS
Assistant United States Attorney